XAVIER BECERRA
Attorney General of California
DAVID A. ZONANA
Supervising Deputy Attorney General
GEORGE TORGUN, State Bar No. 222085
MARY S. THARIN, State Bar No. 293335
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA  94612-0550
Telephone: (510) 879-1974
Fax: (510) 622-2270
E-mail:  Mary.Tharin@doj.ca.gov

*Attorneys for the State of California*

HECTOR BALDERAS
Attorney General of New Mexico
ARI BIERNOFF, State Bar No. 231818
BILL GRANTHAM (*admitted pro hac vice*)
Assistant Attorneys General
 201 Third St. NW, Suite 300
 Albuquerque, NM 87102
 Telephone: (505) 717-3520
 E-Mail: wgrantham@nmag.gov

*Attorneys for the State of New Mexico*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA, by and through XAVIER BECERRA, ATTORNEY GENERAL;** and **STATE OF NEW MEXICO, by and through HECTOR BALDERAS, ATTORNEY GENERAL,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR; OFFICE OF NATURAL RESOURCES REVENUE; RYAN ZINKE,** Secretary of the Interior; and **GREGORY GOULD,** Director, Office of Natural Resources Revenue,<br><br>Defendants. | Case No. 4:17-cv-05948-SBA<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   October 10, 2018<br>Time:  1:00 p.m.<br>Courtroom:  TBD<br>Judge:  Hon. Saundra Brown Armstrong |

1    **<u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>**

2    **TO ALL PARTIES AND COUNSEL OF RECORD:**

3    PLEASE TAKE NOTICE that, on October 10, 2018, at 1:00 p.m., or as soon thereafter as it

4    may be heard, Plaintiffs, State of California, by and through Xavier Becerra, Attorney General,

5    and State of New Mexico, by and through Hector Balderas, Attorney General ("Plaintiffs"), by

6    and through their undersigned counsel, will, and hereby do, move for summary judgment

7    pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rule 7.  This motion

8    will be made before the Honorable Saundra Brown Armstrong, United States District Judge,

9    Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612.

10    Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs hereby move for

11    summary judgment on the ground that there is no genuine dispute as to any material fact and the

12    movant is entitled to judgment as a matter of law.  In support of this motion, Plaintiffs submit the

13    accompanying Memorandum of Points and Authorities and a Proposed Order.

14

15    Dated:  June 13, 2018                                    Respectfully Submitted,

16                                                             XAVIER BECERRA
                                                              Attorney General of California
17                                                             DAVID A. ZONANA

18                                                             /s/ Mary S. Tharin
                                                              MARY S. THARIN
19                                                             GEORGE TORGUN

20                                                             *Attorneys for the State of California*

21
                                                              HECTOR BALDERAS
22                                                             Attorney General of New Mexico

23                                                             /s/ Ari Biernoff
                                                              ARI BIERNOFF
24                                                             BILL GRANTHAM (*admitted pro hac vice*)

25                                                             *Attorneys for the State of New Mexico*

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3

Memorandum of Points and Authorities ........................................................................ 1

4

Background .................................................................................................................... 2

5

Standard of Review ...................................................................................................... 8

6

Argument .................................................................................................................... 10

7

      I.      ONRR Failed to Provide an Opportunity for Meaningful Comment .................... 10

8

               A.     ONRR Failed to Solicit or Consider Comments on the Substance or the Merits of the Valuation Rule or its Predecessor Regulations ............. 11

9

               B.     ONRR Failed to Inform the Public of its Rationale for the Proposed Repeal ........................................................................................................ 12

10

11

      II.     ONRR Entirely Failed to Consider Important Aspects of the Problem the Valuation Rule was Designed to Address, the Benefits of the Valuation Rule, and the Record Supporting the Valuation Rule. .......................................... 15

12

13

      III.    ONRR Failed to Provide a Reasoned Analysis or "Good Reasons" for the Repeal .......................................................................................................... 17

14

15

      IV.    ONRR Offered an Explanation that Runs Counter to the Evidence Before the Agency ...................................................................................................... 19

16

Conclusion .................................................................................................................. 22

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Action for Children's Television v. FCC*
821 F.2d 741 (D.C. Cir. 1987) ............................................................................... 18

*Becerra v. United States Dep't of Interior*
276 F. Supp. 3d 953 (N.D. Cal. 2017) ............................................................ 1, 7, 20

*Biodiversity Legal Fdn. v. Badgley*
309 F.3d 1166 (9th Cir. 2002) ................................................................................ 3

*Chocolate Mfrs. Ass'n of U.S. v. Block*
755 F.2d 1098 (4th Cir. 1985) .............................................................................. 10

*Conn. Light & Power Co. v. Nuclear Regulatory Comm'n*
673 F.2d 525 (D.C. Cir. 1982) .............................................................................. 11

*Consumer Energy Council of Am. v. Fed. Energy Regulatory Comm'n*
673 F.2d 425 (D.C. Cir. 1982) ........................................................................ 11, 13

*Ctr. for Biological Diversity v. Norton*
240 F. Supp. 2d 1090 (D. Ariz. 2003) .................................................................. 14

*Envtl. Def. Fund, Inc. v. Gorsuch*
713 F.2d 802 (D.C. Cir. 1983) ................................................................................ 9

*FCC v. Fox Television Stations, Inc.*
556 U.S. 502 (2009) ..................................................................................... *passim*

*Humane Soc. of U.S. v. Locke*
626 F.3d 1040 (9th Cir. 2010) .............................................................................. 21

*Idaho Farm Bureau Fed'n v. Babbitt*
58 F.3d 1392 (9th Cir. 1995) .......................................................................... 10, 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*
463 U.S. 29 (1983) ....................................................................................... *passim*

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*
545 U.S. 967 (2005) .............................................................................................. 10

*North Carolina Growers' Ass'n, Inc. v. United Farm Workers*
702 F.3d 755 (4th Cir. 2012) ......................................................................... *passim*

*NRDC v. EPA*
683 F.2d 752 (3d Cir. 1982) ................................................................................... 9

ii

1

## TABLE OF AUTHORITIES
### (continued)

Page

*NRDC v. EPA*
863 F.2d 1420 (9th Cir. 1988)..............................................................................13

*NRDC v. SEC*
606 F.2d 1031 (D.C. Cir. 1979) ........................................................................9, 15

*Ober v. EPA*
84 F.3d 304 (9th Cir. 1996)...................................................................................14

*Organized Vill. of Kake v. U.S. Dep't of Agric.*
795 F.3d 956 (9th Cir. 2015)...........................................................................19, 21

*Prometheus Radio Project v. FCC*
652 F.3d 431 (3d Cir. 2011)............................................................................13, 15

*Pub. Citizen v. Steed*
733 F.2d 93 (D.C. Cir. 1984) ..........................................................................10, 18

*State of California v. Bureau of Land Mgmt.*
286 F. Supp. 3d 1054 (N.D. Cal. 2018) ................................................................20

*State of California v. U.S. Bureau of Land Mgmt.*
277 F. Supp. 3d 1106 (N.D. Cal. 2017) ..........................................................16, 17

*Yakima Valley Cablevision, Inc. v. FCC*
794 F.2d 737 (D.C. Cir. 1986) ..............................................................................18

**STATUTES**

5 U.S.C. § 553...............................................................................................9, 11, 13

5 U.S.C. § 705.........................................................................................................7

5 U.S.C. § 706.................................................................................................9, 15, 19

30 U.S.C. § 181 *et seq.*...................................................................................2, 3, 16

30 U.S.C. § 1701 *et seq.*.................................................................................2, 3, 16

43 U.S.C. § 1701 *et seq.*....................................................................................3, 16

44 U.S.C. § 1507.......................................................................................................3

**REGULATIONS**

30 C.F.R. § 1201 *et seq.*..........................................................................................2

iii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3          43 C.F.R. § 3473.3-2(a)(2)............................................................................3

4     **COURT RULES**

5          Fed. R. Civ. P. 56 .................................................................................8, 9

6     **FEDERAL REGISTER NOTICES**

7          66 Fed. Reg. 28,355 (May 22, 2001) .........................................................19

8          66 Fed. Reg. 28,356 .................................................................................19

9          76 Fed. Reg. 30,878 (May 27, 2011) ..........................................................4

10

          76 Fed. Reg. 30,881 ...................................................................................4

11
          76 Fed. Reg. 30,882 ...................................................................................4

12
          80 Fed. Reg. 608 (Jan. 6, 2015) ..........................................................*passim*

13

14        80 Fed. Reg. 617 .......................................................................................4

15        80 Fed. Reg. 628 .......................................................................................4

16        80 Fed. Reg. 7,994 ...................................................................................16

17        81 Fed. Reg. 43,338 (July 1, 2016) ...........................................1, 5, 6, 15

18        81 Fed. Reg. 43,339 ........................................................................4, 6, 15

19        81 Fed. Reg. 43,340 ..........................................................................5, 21

20        81 Fed. Reg. 43,340-41 ............................................................................21

21
          81 Fed. Reg. 43,341 ...................................................................................6

22
          81 Fed. Reg. 43,342 .................................................................................21

23
          81 Fed. Reg. 43,343 .................................................................................21

24
          81 Fed. Reg. 43,344 ........................................................................4, 6, 15

25
          81 Fed. Reg. 43,354 ...................................................................................5

26
          81 Fed. Reg. 43,355 ...................................................................................6

27
          81 Fed. Reg. 43,359 ........................................................................6, 16, 19

28

iv

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3   81 Fed. Reg. 43,366 ................................................................................................3

4   81 Fed. Reg. 43,368 ..............................................................................................19

5   81 Fed. Reg. 43,375 ..............................................................................................21

6   82 Fed. Reg. 11,823 (Feb. 27, 2017) ......................................................................7

7   82 Fed. Reg. 16,093 (Mar. 31, 2017) ...............................................................8, 18

8   82 Fed. Reg. 16,323 (Apr. 4, 2017) ................................................................ *passim*

9   82 Fed. Reg. 16,324 ................................................................................................7

10  82 Fed. Reg. 16,325 ...........................................................................................8, 12

11  82 Fed. Reg. 36,934 (Aug. 7, 2017) ............................................................... *passim*

12  82 Fed. Reg. 36,934-37 .........................................................................................14

13  82 Fed. Reg. 36,934-39 .........................................................................................14

14  82 Fed. Reg. 36,934-89 .........................................................................................12

15  82 Fed. Reg. 36,935 .........................................................................................15, 20

16  82 Fed. Reg. 36,935-39 .........................................................................................17

17  82 Fed. Reg. 36,936 ..............................................................................................18

18  82 Fed. Reg. 36,937 ..............................................................................................20

19  82 Fed. Reg. 36,937-38 ....................................................................................18, 21

20  82 Fed. Reg. 36,938 ..............................................................................................19

21  82 Fed. Reg. 36,938-39 .........................................................................................19

22  82 Fed. Reg. 36,939 .........................................................................................16, 19

23  82 Fed. Reg. 36,943-44 .........................................................................................16

24  82 Fed. Reg. 36,944 ..............................................................................................16

25  82 Fed. Reg. 36,951-52 .........................................................................................13

26  82 Fed. Reg. 36,952 ..............................................................................................19

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES
(continued)

Page

82 Fed. Reg. 36,953 ...................................................................................................19

OTHER AUTHORITIES

Exec. Order 13,771 ...................................................................................................13

Exec. Order 13,783 .............................................................................................8, 14, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

The States of California and New Mexico ("Plaintiffs") challenge an action by the United States Department of the Interior's Office of Natural Resources Revenue ("ONRR") to repeal a rule which updated decades-old regulations governing the collection of royalties on coal, oil, and gas extracted from federal and Indian lands.  For too long, taxpayers had not received adequate royalty returns from the sale of publically-owned energy resources because ONRR's regulations failed to keep pace with changes in coal, oil, and gas markets.  ONRR spent five years developing a replacement rule to reform its royalty determination process and in 2016 promulgated the Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform rule.  81 Fed. Reg. 43,338 (July 1, 2016) ("Valuation Rule" or "Rule").  Under the new Administration, however, ONRR struck that new Rule from the books in a matter of months and reverted to the old scheme that ONRR acknowledges is flawed.  *See* 82 Fed. Reg. 36,934 ("Repeal of Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform") (Aug. 7, 2017) ("Final Repeal" or "Repeal").  In its headlong rush to the Repeal, ONRR violated bedrock principles of federal rule making under the Administrative Procedure Act ("APA") and ignored well established precedent concerning the repeal of a final rule.[1]

To begin with, the agency violated the notice-and-comment requirements of the APA in at least two respects.  First, ONRR's Proposed Repeal failed to solicit comments on either the merits of the Valuation Rule it proposed to repeal or the decades-old regulations to be reinstated.  Second, the Proposed Repeal's cursory discussion of ONRR's rationale failed to give the public adequate notice of the agency's thinking, as did ONRR's decision in the Final Repeal to rely on different rationales that it had never put out for comment.  Notice-and-comment processes of this type have fairly been called an "empty charade."

In addition, the Repeal withdrew the Valuation Rule without any consideration of the significant problems that the Valuation Rule was designed to address.  For example, ONRR

---

[1] Prior to its hasty repeal of the Valuation Rule, ONRR declared that it was delaying the Rule's effective date (which had already passed) pursuant to section 705 of the APA, 5 U.S.C. § 705.  This district court declared that action unlawful.  *See Becerra v. United States Dep't of Interior*, 276 F. Supp. 3d 953 (N.D. Cal. 2017).

1

offered no explanation of how the agency can meet its statutory obligation to obtain a fair return for the taxpayer in the absence of the Valuation Rule, and seemingly admits that the reinstated rule is inadequate.  Nor did ONRR explain why it is voluntarily foregoing the collection of tens of millions of dollars in royalties on behalf of taxpayers.  And, by its own admission, ONRR did not consider the voluminous evidence it had collected during the rule making process for the Valuation Rule.  These failures to consider its legal responsibilities or the evidence before it render ONRR's rulemaking arbitrary and capricious.

Nor did ONRR offer any good reasons to justify its wholesale repeal of the Valuation Rule. The case law does not allow the proverbial throwing out of the baby with the bathwater, yet that is precisely what ONRR has done.  The few examples of "problems" that ONRR cited in the Final Repeal as grounds for repeal are, on their face, issues that can be remedied through agency guidance, clarifications, or modifications to discrete portions of the Rule.  An agency may not jump to the most drastic course of action without giving consideration to alternatives, including more incremental action.  Here, ONRR completely failed to do so.

Moreover, the "problems" ONRR identified as justification for the Final Repeal merely repeat issues that were already considered and dismissed by the agency in promulgating the Valuation Rule.  A valid repeal cannot be based on issues already considered in the underlying rulemaking unless the facts have changed substantially.  But ONRR cited to no new reports, studies, or facts to justify its abrupt reversal of course.  To the contrary, the evidence before the agency during the promulgation of the Valuation Rule did not change, and ONRR's Repeal failed to consider or address that evidence.  In essence, ONRR has performed a 180-degree turn without providing any reasoned basis for doing so, in violation of the APA.  Consequently, the Repeal should be held unlawful and set aside by this Court.

**BACKGROUND**

Pursuant to authority granted by Congress, the Department of the Interior ("DOI") is responsible for managing the calculation and collection of royalties on oil, gas, and coal produced on federal and Indian lands.  30 U.S.C. §§ 187, 1701.  This authority has been further delegated to

ONRR, a subdivision of DOI.  *See* 30 C.F.R. § 1201 *et seq*.  Each year, ONRR collects billions of dollars in royalties on oil, gas, and coal extracted from public lands.  A significant portion of this revenue is distributed to states through direct disbursements and grants.  30 U.S.C. § 191(a); 81 Fed. Reg. at 43,366 (AR 68[2]).  Because the amount of royalties ONRR collects is derived from the value of the product sold, accurate commodity valuation is an essential component of royalty calculation.  *See* 30 U.S.C. § 207(a).

Defendants' duty to regulate the valuation of public commodities is mandated by several federal statutes.  In particular, the Federal Oil & Gas Royalty Management Act of 1982, 30 U.S.C. § 1701 *et seq*., requires Defendants to "establish a comprehensive inspection, collection and fiscal and production accounting and auditing system to provide the capability to *accurately determine* oil and gas royalties … and to collect and account for such amounts in a timely manner."  *Id*. § 1711(a) (emphasis added).  The Mineral Leasing Act of 1920, 30 U.S.C. § 181 *et seq*., requires that coal lessees pay "a royalty in such amount as the Secretary [of the Interior] shall determine of not less than 12½ per centum of the value of coal as defined by regulation."[3]  30 U.S.C. § 207(a).  In addition, the Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq*., requires that "the United States receive fair market value of the use of the public lands and their resources."  43 U.S.C. § 1701(a)(9).

In 2007, DOI's Royalty Policy Committee ("RPC") Subcommittee on Royalty Management issued a report identifying pervasive problems with ONRR's valuation regulations, which undermined the agency's ability to accurately calculate royalties.  *See* 80 Fed. Reg. 608 (Jan. 6, 2015).[4]  The existing 1980s-era regulations required "a lessee to value production based on a series of 'benchmarks' to be applied in a prescribed order."  *Id*. at 616-17; *see also* 76 Fed. Reg.

---

[2] The administrative record in this matter is cited as "AR [page number]," excluding leading zeros.
[3] "[T]he Secretary may determine a lesser amount in the case of coal recovered by underground mining operations."  30 U.S.C. § 207(a).  Current onshore royalty rates are set at 12.5% for surface coal, oil, and natural gas (30 U.S.C. § 207(a); 30 U.S.C. § 266(b)-(c)), and at 8% for subsurface coal (43 C.F.R. § 3473.3-2(a)(2)).
[4] Although Defendants did not include all of the relevant Federal Register notices in the administrative record, "federal courts are required to take judicial notice of the Federal Register." *Biodiversity Legal Fdn. v. Badgley*, 309 F.3d 1166, 1179 (9th Cir. 2002); *see* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed.").

3

1   at 30,882 (AR 3956) (describing five benchmarks used for coal sales).  Because the benchmark

2   method posed various practical difficulties and proved "difficult for industry to follow and ONRR

3   to administer," 80 Fed. Reg. at 617, 628, the RPC recommended replacing this outdated system.

4   *Id*. at 608.  Further, the report recommended that ONRR clarify and revise its methods for

5   "checking royalty compliance for solid minerals [such as coal], with particular attention to non-

6   arm's-length transactions."[5]  76 Fed. Reg. at 30,881-82 (AR 3955-3956).  Additionally, the RPC

7   report recommended that ONRR clarify its regulations governing deductions that lessees were

8   permitted to take for transportation costs.  80 Fed. Reg. at 608.  Because ONRR's regulations did

9   not require clear reporting of these deductions, lessees could inflate their reported transportation

10  costs with non-transportation expenses.  *See* 81 Fed. Reg. at 43,344 (AR 46).  Thus, the RPC

11  recommended revising these regulations "to provide more certainty for ONRR, [the Bureau of

12  Land Management], and industry, which should result in better compliance."  80 Fed. Reg. at

13  608.

14       Responding to these concerns, ONRR initiated a five-year rulemaking process to update

15  and modernize its regulations.  In 2011, the agency issued two Advance Notices of Proposed

16  Rulemaking requesting public input on how to revise regulations governing the valuation of

17  federal oil and gas (76 Fed. Reg. 30,878 (May 27, 2011)) and coal (76 Fed. Reg. 30,881 (May 27,

18  2011) (AR 3955)).  The agency noted that existing rules governing federal gas and coal had been

19  in effect since 1988 and 1989, respectively, and that the regulations "have not kept pace with

20  significant changes that have occurred in the domestic … market during the last 20-plus years."

21  76 Fed. Reg. at 30,878, 30,881 (AR 3955).  With respect to coal, ONRR specifically sought to

22  address "non-arm's-length valuation and ramifications spurred by changes in the coal mining

23  industry, including increasing vertical integration of mining and power production and increasing

24  production by coal cooperatives."[6]  76 Fed. Reg. at 30,882 (AR 3956).  In both of these

25  _____

26  [5] In a non-arm's-length transaction, the economic interests of the parties on either side of the transaction are aligned through common ownership or some other financial relationship.  For example, the parties might both be subsidiaries of the same parent company.

27  [6] The Valuation Rule defined "coal cooperatives" as "formal or informal organizations of companies or other entities sharing in a common interest to produce and market coal or coal-based products."  81 Fed. Reg. at 43,339 (AR 41).

28

4

circumstances, ONRR noted that valuation can often be underreported where entities buying and selling coal "lack the opposing economic interests characteristic of arm's-length sales."  81 Fed. Reg. at 43,354 (AR 56).

      After conducting outreach to stakeholders including six public workshops, ONRR issued the "Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform: Proposed Rule," 80 Fed. Reg. 608 (Jan. 6, 2015) ("Proposed Valuation Rule"); *see* 81 Fed. Reg. at 43,338 (AR 39).  In the Proposed Valuation Rule, ONRR noted that "the Secretary's responsibilities … require development of flexible valuation methodologies that lessees can accurately comply with in a timely manner."  80 Fed. Reg. at 608.  ONRR further stated that it was "proposing proactive and innovative changes" in order to "increase the effectiveness and efficiency of our rules."  *Id*. The Proposed Valuation Rule "solicited comments on how to simplify and improve the valuation of coal disposed of in non-arm's-length transactions."  *Id*.  ONRR accepted public comment on the Proposed Valuation Rule over an extended 120-day period, during which the agency received more than 1,000 pages of written comments from over 300 commenters, including "industry, industry trade groups, Congress, State governors, States, local municipalities, two Tribes, local businesses, public interest groups, and individual commenters."  81 Fed. Reg. at 43,338 (AR 39). The agency "carefully considered all of the public comments … and, in some instances, revised the language of the final rule based on these comments."  *Id*.

      ONRR finalized the Valuation Rule on July 1, 2016.  *Id*.  ONRR's stated purpose for the Rule was:

> (1) to offer greater simplicity, certainty, clarity, and consistency in product valuation for mineral lessees and mineral revenue recipients; (2) to ensure that Indian mineral lessors receive the maximum revenues from coal resources on their land, consistent with the Secretary's trust responsibility and lease terms; (3) to decrease industry's cost of compliance and ONRR's cost to ensure industry compliance; and (4) to provide early certainty to industry and to ONRR that companies have paid every dollar due.

*Id*.  The Rule codified ONRR's long-standing position that "[t]he best indication of value is the gross proceeds received under an arm's-length contract between independent persons who are not affiliates and who have opposing economic interests regarding that contract."  *Id*. at 43,340 (AR

41).  To accomplish this, the Rule eliminated the complicated and opaque benchmark system for natural gas and coal, making valuation methodologies for these resources consistent with changes that the agency had already made with respect to federal oil.  *Id.*  The Valuation Rule required value to be measured based on the first arm's-length sale of the product, including where coal is sold among members of a coal cooperative, and in cases where coal is sold to an affiliated electric power plant.  81 Fed. Reg. at 43,339, 43,355 (AR 41, 57).  The Rule also included a "default provision," which codified ONRR's ability to determine value in specific circumstances, including where the information provided by the lessee as to value is insufficient or unreliable.  *Id.* at 43,341 (AR 43).  Further, the Valuation Rule made certain common-sense changes to the process for taking transportation deductions, including "requiring lessees to report transportation separately," rather than bundling these costs with the product sales price, in order to "facilitate transparency, audits, and reviews."  *Id.* at 43,344 (AR 46).

ONRR stated that the Rule took "steps toward ensuring that the valuation process for federal and Indian coal resources better reflects the changing energy industry while protecting taxpayers and Indian assets."  *Id.*  ONRR estimated that the Rule would increase royalty collections by between $71.9 million and $84.9 million annually, and reduce industry's administrative costs by $3.61 million annually.  *Id.* at 43,359 (AR 61).  In a press release following the Rule's finalization, then-Secretary of Interior Sally Jewell stated that the Rule "is important because it ensures, in part, that our federal coal program is properly structured to obtain all revenue due to taxpayers," and "[t]he proactive, innovative changes in the updated rule will increase the effectiveness and efficiency of the valuation process, and provide greater clarity and consistency for lessees and revenue recipients."  AR 18.

ONRR provided 180 days for regulated parties to adjust their accounting systems before the Rule went into effect on January 1, 2017.  81 Fed. Reg. at 43,338 (AR 39).  During that time, the agency provided guidance and trainings regarding how lessees should implement the Rule.  *See* AR 122 (requesting industry input so as to "design[] meaningful training sessions that are mutually beneficial to all"); AR 190-92 (providing guidance); AR 754-924 (training

6

1   presentation); AR 1305 (list of eleven training sessions).  A few weeks after the Rule was

2   finalized, an ONRR staff member advised one lessee that the agency was "awaiting guidance

3   from the new Presidential administration as to whether the new Coal Valuation rule will be pulled

4   back."  AR 3434.

5          The following month, ONRR issued a notice purporting to "postpone the effective date" of

6   the Rule, citing section 705 of the APA, 5 U.S.C. § 705, and legal challenges to the Rule that had

7   been filed in December 2016 in the U.S. District Court of Wyoming.  82 Fed. Reg. 11,823 (Feb.

8   27, 2017) ("Postponement of Effectiveness of the Consolidated Federal Oil & Gas and Federal &

9   Indian Coal Valuation Reform 2017 Valuation Rule") (AR 4035-36).  This district court found

10  the postponement notice to be a violation of the plain text of section 705, and an improper end-

11  run around the APA's notice-and-comment requirements.  *Becerra*, 276 F. Supp. 3d at 965, 967

12  ("Defendants' argument that recent questions and complaints raised new issues justifying the

13  postponement does not justify acting outside of statutory authority.").

14         Four months after the Rule went into effect, ONRR issued a proposal to repeal the Rule in

15  its entirety.  82 Fed. Reg. 16,323 (Apr. 4, 2017) ("Repeal of Consolidated Federal Oil & Gas and

16  Federal & Indian Coal Valuation Reform: Proposed Rule") ("Proposed Repeal") (AR 4035).  As

17  justification, ONRR cited concerns with the Rule that had been raised by petitioners in the

18  District of Wyoming litigation and in a letter authored by certain industry groups.  *Id*.  ONRR

19  acknowledged that these "lawsuits and correspondence echoed the concerns voiced by many

20  industry representatives in workshops during the public comment period that preceded the 2017

21  Valuation Rule's promulgation."  *Id*.  The Proposed Repeal, which took up less than three pages

22  in the Federal Register, contained no analysis or data related to any purported deficiencies in the

23  Rule, and stated incorrectly that the repeal would "preserve the regulatory status quo" while

24  ONRR reconsidered "whether the changes made by the 2017 Valuation Rule are needed."  *Id*. at

25  16,324 (AR 4036); *see Becerra*, 276 F. Supp. 3d at 964 ("After nearly five years of carrying out

26  the requisite rulemaking milestones, as well as public workshops, and trainings leading up to the

27

28

7

1    effective date, ONRR's suspension of the Rule did not merely 'maintain the status quo,' but

2    instead prematurely restored a prior regulatory regime.").

3          Simultaneously, ONRR also published an "advance notice of public rulemaking" seeking

4    comment on whether the Valuation Rule was needed and what, if any, revisions should be made

5    to it. 82 Fed. Reg. 16,325 (Apr. 4, 2017) ("Federal Oil and Gas and Federal and Indian Coal

6    Valuation: Advance Notice of Proposed Rulemaking") ("ANPRM") (AR 4697).  The public was

7    given a short 30-day window to submit comments on both the Proposed Repeal and the ANPRM,

8    despite multiple requests for an extension of the comment period. *Id.*; AR 6076, 6380, 6492,

9    8351-52.  Prior to the end of the comment period, ONRR staff began drafting the Final Repeal.

10   AR 6004, 6037, 6081-6113.  The agency received 776 comments in favor of, and 1567 comments

11   opposed to, the Proposed Repeal.  AR 8957.  In response to the ANPRM, ONRR received only

12   33 total comments.  AR 8961.

13         On August 7, 2017, ONRR published a final rule entitled "Repeal of Consolidated Federal

14   Oil & Gas and Federal & Indian Coal Valuation Reform," which thirty days later repealed the

15   Valuation Rule "in its entirety" and reinstated preexisting royalty regulations.  82 Fed. Reg.

16   36,934 (AR 10182).  ONRR presented three principal reasons for the Repeal.  First, the agency

17   claimed that the Valuation Rule had "a number of defects that make certain provisions

18   challenging to comply with, implement, or enforce." *Id*.  Second, ONRR stated that certain

19   provisions of the Rule were inconsistent with Executive Order 13,783, entitled "Promoting

20   Energy Independence and Economic Growth," 82 Fed. Reg. 16,093 (Mar. 31, 2017), because they

21   would "unnecessarily burden the development of Federal oil and gas and Federal and Indian

22   coal." *Id*.  Third, ONRR claimed that the reestablishment of the Royalty Policy Committee "will

23   lead to the development and promulgation of a new, revised valuation rule that will address the

24   various problems that have now been identified in the rule we are repealing." *Id*.

25                              **STANDARD OF REVIEW**

26         Summary judgment is appropriate when the record shows that "there is no genuine dispute

27   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

28

8

56(a).  Judicial review of administrative decisions is governed by section 706 of the APA.

Agency actions are subject to judicial reversal where they are "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction,

authority, or limitations," or "without observance of procedure required by law."  5 U.S.C. §

706(2)(A), (C), (D).

        Prior to formulating, amending, or repealing a rule, the APA requires that a federal agency

engage in a notice-and-comment process that "give[s] interested persons an opportunity to

participate in [a] rule making through submission of written data, views, or arguments."  5 U.S.C.

§ 553(c).  The agency must first publish a notice in the Federal Register that includes "the terms

or substance of the proposed rule or a description of the subjects and issues involved," and then

must explain its ultimate decision "[a]fter consideration of the relevant matter presented."  *Id*. at §

553(b), (c).  The public must be given a "meaningful opportunity" to comment on "relevant and

significant issues" and be provided adequate time to comment.  *North Carolina Growers' Ass'n,*

*Inc. v. United Farm Workers*, 702 F.3d 755, 770 (4th Cir. 2012) ("*NC Growers*").  Courts apply

an "exacting" standard when reviewing "an agency's procedural compliance with statutory

norms" such as the APA's notice-and-comment requirement.  *NRDC v. SEC*, 606 F.2d 1031,

1048 (D.C. Cir. 1979); *see also Envtl. Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 817 (D.C. Cir.

1983) (applying "strict scrutiny" to the question of whether agency complied with notice-and-

comment requirements).  Moreover, in reviewing an agency's adherence to procedural

requirements, courts have found it appropriate to "scrutinize the procedures employed by the

agency all the more closely where the agency has acted, within a compressed time frame, to

reverse itself by the procedure under challenge."  *NRDC v. EPA*, 683 F.2d 752, 760 (3d Cir.

1982).

        To satisfy the "arbitrary and capricious" standard of review, an agency must "examine the

relevant data and articulate a satisfactory explanation for its action including a rational connection

between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*

*Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) ("*State Farm*") (internal quotation marks

9

omitted).  An agency action is arbitrary and capricious where the agency (i) has relied on factors which Congress has not intended it to consider; (ii) entirely failed to consider an important aspect of the problem; (iii) offered an explanation for its decision that runs counter to the evidence before the agency; or (iv) is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *Id.*

When an agency reverses course by repealing a fully-promulgated regulation, the "agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change." *Id.* at 42.  Further, the agency must show that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("*Fox*").  When an agency's "new policy rests upon factual findings that contradict those which underlay its prior policy," it must "provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id.* Further, any "unexplained inconsistency" between a rule and its repeal is "a reason for holding an interpretation to be an arbitrary and capricious change." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005).  Finally, an agency cannot suspend a validly promulgated rule without first "pursu[ing] available alternatives that might have corrected the deficiencies in the program which the agency relied upon to justify the suspension." *Pub. Citizen v. Steed*, 733 F.2d 93, 103 (D.C. Cir. 1984).

## ARGUMENT

### I.    ONRR FAILED TO PROVIDE AN OPPORTUNITY FOR MEANINGFUL COMMENT.

"The purpose of the notice and comment requirement is to provide for meaningful public participation in the rule-making process." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1404 (9th Cir. 1995); *see also NC Growers*, 702 F.3d at 763; *Chocolate Mfrs. Ass'n of U.S. v. Block*, 755 F.2d 1098, 1103 (4th Cir. 1985) ("The notice-and-comment procedure encourages public participation in the administrative process and educates the agency, thereby helping to ensure informed agency decisionmaking.").  "The value of notice and comment prior to repeal of a final rule is that it ensures that an agency will not undo all that it accomplished through its

10

1   rulemaking without giving all parties an opportunity to comment on the wisdom of repeal."

2   *Consumer Energy Council of Am. v. Fed. Energy Regulatory Comm'n*, 673 F.2d 425, 446 (D.C.

3   Cir. 1982).

4           Here, ONRR's notice-and-comment process was inadequate for two reasons that compel

5   setting the Repeal aside.  First, ONRR failed to solicit comments on the merits of the Valuation

6   Rule it proposed to repeal, or the decades-old regulations to be reinstated, and attempted to side-

7   step "consideration of the relevant matter presented" through the initiation of a separate

8   rulemaking process.  *See* 5 U.S.C. § 553(c).  Second, in the Proposed Repeal, ONRR offered a

9   barebones discussion of its rationale that was wholly insufficient to give the public notice, and

10  then exacerbated this error by relying in the Final Repeal on a different set of rationales that it

11  never put out for comment.  As a result, the notice-and-comment process was merely an "empty

12  charade" that violated the APA.  *Conn. Light & Power Co. v. Nuclear Regulatory Comm'n*, 673

13  F.2d 525, 528 (D.C. Cir. 1982); *see also NC* Growers, 702 F.3d at 772.

14          **A.    ONRR Failed to Solicit or Consider Comments on the Substance or the**
                 **Merits of the Valuation Rule or its Predecessor Regulations.**
15

16          The Proposed Repeal did not invite, and the agency did not consider, comments on the

17  substance or merits of the Valuation Rule or its predecessor regulations—an omission which

18  violated the APA.  *See NC Growers*, 702 F.3d at 759-60.  While the 2015 Proposed Valuation

19  Rule requested comment on a number of both broad and specific questions, the 2017 Proposed

20  Repeal did not solicit comments on any substantive issue or subject matter concerning the

21  valuation of oil, gas, or coal produced from federal or Indian leases.  *Compare* 80 Fed. Reg. at

22  608, 628 *with* 82 Fed. Reg. at 16,323 (AR 4694).

23          In *NC Growers*, the Fourth Circuit struck down a similar attempt by a federal agency to

24  repeal a rule without inviting comment on the rule's merits.  702 F.3d at 759.  In 2008, the

25  Department of Labor ("DOL") promulgated regulations governing visa requirements for

26  temporary agricultural workers, replacing regulations that dated back to 1987.  *Id.* at 759-60.

27  Two months after the 2008 regulations were promulgated, DOL proposed to suspend them and

28  "reinstate on an interim basis" the 1987 regulations.  *Id*. at 760.  The agency stated that it "only

1   would consider comments concerning the suspension action itself, and not regarding the merits of

2   either set of regulations." *Id.* at 761.  The court ruled that, because the agency "did not solicit or

3   receive relevant comments regarding the substance or merits of either set of regulations," it failed

4   to "provide a meaningful opportunity for comment," in violation of the APA.  *Id.* at 770.

5        Similarly here, while ONRR's Proposed Repeal simply announced the mechanisms for

6   submitting comments on the repeal action itself, all discussion of the merits of either the old or

7   new regulations was relegated to a separate notice-and-comment process.  *See* 82 Fed. Reg. at

8   16,325 (AR 4697) (ANPRM requesting "comments and suggestions … on whether revisions to

9   the [predecessor] regulations … are needed and, if so, what specific revisions should be

10  considered.").  The Proposed Repeal explicitly restricted the scope of comment by directing all

11  substantive comments to the ANPRM.  82 Fed. Reg. at 16,323 (AR 4035) (explaining that

12  "comments on whether revisions are appropriate or needed to the preexisting regulations

13  governing royalty values, including comments on whether the 2017 Valuation Rule should

14  ultimately be retained or repromulgated, in whole or in part" should be directed to ANPRM

15  process).  Thus, comments on the Proposed Repeal could not meaningfully address even the most

16  basic question of whether the Valuation Rule question should be retained.

17       In the Final Repeal, ONRR did not address the 33 comments the agency received in

18  response to the ANPRM.  AR 8961; *see* 82 Fed. Reg. at 36,934-89 (AR 10182-10237).  By

19  bifurcating the notice-and-comment in this way, ONRR entirely failed to elicit and consider

20  comments on the Valuation Rule's or the predecessor regulations' substance or merits before

21  issuing the Final Repeal.  Thus, ONRR failed to provide a meaningful opportunity for the public

22  to comment on the "substance or merits of either set of regulations," in violation of the APA.  *See*

23  *NC Growers*, 702 F.3d at 770.

24       **B.     ONRR Failed to Inform the Public of its Rationale for the Proposed Repeal.**

25       ONRR also improperly undermined the rulemaking process by failing to provide sufficient

26  information to allow the public to engage in a meaningful discussion of the agency's rationale for

27  repealing the Valuation Rule.  *See NRDC v. EPA*, 863 F.2d 1420, 1429 (9th Cir. 1988) (an agency

28

12

"must provide notice sufficient to fairly apprise interested persons of the subjects and issues before the Agency"); *Prometheus Radio Project v. FCC*, 652 F.3d 431, 452 (3d Cir. 2011) (proposal lacked sufficient detail to permit "discussion of the actual issues involved").  For this second independent reason, ONRR's actions were unlawful and the Repeal must be set aside.

The Proposed Repeal provided less than one page of explanation for ONRR's proposal to repeal the Valuation Rule.  82 Fed. Reg. at 16,323 (AR 4694).  First, the Proposed Repeal stated that repealing the Valuation Rule "would allow ONRR to reconsider whether the changes made by the Valuation Rule are needed."  *Id*.  In addition to telling the public practically nothing, this is not a rationale sufficient to support a repeal.  It was improper for ONRR to argue that the Repeal was necessary to provide the agency with time to reconsider the Rule because "the APA expressly contemplates that notice and an opportunity to comment will be provided *prior* to agency decisions to repeal a rule."  *Consumer Energy Council*, 673 F.2d at 446 (emphasis added).  The mere possibility that the agency would reconsider the merits of the 2017 Valuation Rule at some point in the future does not satisfy the APA, which requires that any rule making must occur "[a]fter consideration of the relevant matter presented."  5 U.S.C. § 553(c).

The additional justifications proffered by ONRR in the Proposed Repeal are likewise inadequate.  First, the agency stated that the repeal "would be consistent with the President's January 30, 2017, Executive Order [13,771] on Reducing Regulation and Controlling Regulatory Costs."  82 Fed. Reg. at 16,323 (AR 4694).  However, the agency abandoned this justification in the Final Repeal, which made only passing mention of Executive Order 13,771.  *Id*. at 36,951-52 (AR 10199-10200).  Second, the Proposed Repeal stated that ONRR had "identified several areas in the rule that warrant reconsideration," including "how to value coal production in certain non-arm's length transactions, how to value coal when the first arm's-length sale of the coal is electricity, how to value gas in certain no-sale situations, and under what circumstances, and on whom, ONRR's valuation determinations are binding."  *Id*. at 16,323 (AR 4694).  No explanation was provided as to why these vaguely-defined areas of concern merited reconsideration, much less why they justified a proposal to repeal the Rule in its entirety.  The public could not submit

1   comments on whether the agency had valid reasons for questioning these provisions, because no

2   reasons were given.  *See* AR 6757 (noting "lack of any explanation" provided by Proposed

3   Repeal), 8386.

4       In the Final Repeal, ONRR provided an almost entirely new set of post-hoc justifications

5   for repealing the Valuation Rule.  82 Fed. Reg. at 36,934-39 (AR 10182-10187).  Although the

6   agency reasserted some of the alleged defects to which it had alluded in the Proposed Repeal, the

7   Final Repeal also pointed to a number of completely new "substantive defects," such as the

8   "definition of coal cooperative," the "default provision," and the "requirement that arm's-length

9   contracts be in writing and signed by all parties."  *Id*. at 36,934-37 (AR 10182-10185).  ONRR

10   also cited Executive Order 13,783 ("Promoting Energy Independence and Economic Growth"),

11   and the reestablishment of the Royalty Policy Committee, neither of was mentioned in the

12   Proposed Repeal.  *Id*. at 36,934-39 (AR 10182-10187).

13       Because the public had no notice, it was denied a meaningful opportunity to comment on 1)

14   the validity of ONRR's concerns over alleged "defects" in the Rule (including whether these had

15   already been addressed by the agency), 2) the applicability of Executive Order 13,783, or 3) the

16   relevance of the RPC's reestablishment.  *See Idaho Farm Bureau,* 58 F.3d at 1404; *see also Ober*

17   *v. EPA*, 84 F.3d 304, 313-14 (9th Cir. 1996) (noting that "post hoc" justifications "should have

18   been available for public comment *before* the [agency] proposed [action]); *Ctr. for Biological*

19   *Diversity v. Norton*, 240 F. Supp. 2d 1090, 1106–07 (D. Ariz. 2003) ("Defendant solicited the

20   input of others without providing them with all of the information necessary to make any such

21   input meaningful and informed.").[7]

22       For the aforementioned reasons, under the "exacting standard" applied to an agency's

23   adherence to procedural standards, the Repeal should be held unlawful and set aside as "not in

24

25   [7] There are additional reasons to believe that the notice-and-comment process was inadequate. The *Prometheus Radio* court noted that, two weeks before that comment period closed, "a draft of

26   the order was circulated internally."  *Prometheus Radio Project,* 652 F.3d at 453.  Similarly here, draft sections of the Final Repeal were circulated well before the close of the comment period.

27   (AR 6037, 6081-6113).  "This is not the agency engagement the APA contemplates." *Prometheus Radio Project,* 652 F.3d at 453.

28

1   accordance with law" and "without observance of procedure required by law."  5 U.S.C. §

2   706(2)(A), (D); *see NRDC v. SEC*, 606 F.2d at 1048.

3   **II.    ONRR ENTIRELY FAILED TO CONSIDER IMPORTANT ASPECTS OF THE PROBLEM
         THE VALUATION RULE WAS DESIGNED TO ADDRESS, THE BENEFITS OF THE**

4   **VALUATION RULE, AND THE RECORD SUPPORTING THE VALUATION RULE.**

5          When repealing a duly-promulgated regulation, an agency must provide a "reasoned

6   analysis" for its change in position and "cogently explain why it has exercised its discretion in a

7   given manner."  *State Farm*, 463 U.S. at 42, 48.  Over the course of more than five years, ONRR

8   gathered data and developed a Rule designed to address the widespread undervaluation of public

9   resources.  *See* 81 Fed. Reg. at 43,338 (AR 39).  After promulgating the Valuation Rule in order

10  to address fundamental issues with an outdated regulatory regime, ONRR has now repealed that

11  Rule without so much as a mention of the pervasive faults that the agency previously identified in

12  the now-resurrected valuation scheme, nor how these faults impact ONRR's ability to fulfill its

13  statutory mandates.  The agency also failed to explain its decision to favor the financial interests

14  of lessors over those of the public, and to analyze the voluminous record that was before the

15  agency when it promulgated the Valuation Rule.

16         Crucially, ONRR has not offered any explanation for why the Valuation Rule's primary

17  achievement—the replacement of a cumbersome benchmark system with a valuation process that

18  instead uses the "best indicator of value under a non-arm's-length sale"—should be rescinded.

19  *Id*. at 43,339 (AR 41).  Nor has the agency addressed the Rule's common-sense updates to

20  transportation allowances, which were designed to "facilitate transparency, audits, and reviews."

21  *Id*. at 43,344 (AR 46).  In fact, the agency acknowledges that the regulatory regime to which it

22  has now reverted is inadequate, and contends that it will promulgate yet another "new, revised

23  valuation rule" at some unspecified future date.  82 Fed. Reg. at 36,935 (AR 183).

24         By ignoring the problems that animated the Valuation Rule, ONRR has failed to address

25  whether "the new policy is permissible under the statute[s]" which the agency purports to

26  interpret.  *Fox*, 556 U.S. at 515.  Multiple federal statutes require the agency to accurately and

27  fairly calculate royalties or federal resources.  *See* 30 U.S.C. § 1711(a) (mandating the accurate

28

15

1    determination of oil and gas royalties); 30 U.S.C. § 207(a) (requiring collection of "not less" than

2    applicable royalty rates established by the Secretary); 43 U.S.C. § 1701(a)(9) (requiring that "the

3    United States receive fair market value of the use of the public lands and their resources").

4    ONRR proposed the Valuation Rule "to permit the Secretary to discharge [DOI's] royalty

5    valuation responsibility in an environment of continuing and accelerating change in the industry

6    and in the marketplace."  80 Fed. Reg. at 7,994 (AR 6074).  ONRR has not explained how it can

7    discharge these statutory responsibilities in light of the Repeal, and in fact has indicated that it

8    cannot do so under the reinstated rules.  *See* 82 Fed. Reg. at 36,939 (AR 10187) ("The

9    Department takes seriously its responsibility to ensure that taxpayers receive the full value from

10   Federal mineral leases, which is why ONRR intends to continue to consider future changes and

11   develop a new rulemaking after further analysis and consultations with our key stakeholders and

12   the general public.").

13       Further, ONRR has failed to explain its decision to forgo the $71.9-$84.9 million in

14   increased royalty revenue to taxpayers that the Valuation Rule would have achieved annually.

15   81 Fed. Reg. at 43,359 (AR 61).  ONRR admits that the Repeal costs state and local governments,

16   Indian lessors, and the federal government "an estimated annual decrease in royalty collections

17   between $60.1 million and $74.8 million."[8]  In essence, ONRR has decided that this revenue

18   belongs in the hands of industry, rather than with the taxpayers.[9]  But shifting this cost burden to

19   the government is contrary to the intent of Congress, which has mandated federal lessees to pay

20   accurate royalties for the benefit of the American people.  *See* 30 U.S.C. § 1711(a); 30 U.S.C.

21   § 207(a); 43 U.S.C. § 1701(a)(9); *see also State of California v. U.S. Bureau of Land Mgmt.*, 277

22   F. Supp. 3d 1106, 1122 (N.D. Cal. 2017) (finding agency acted arbitrarily by failing to consider

23   "both the costs *and* the benefits" of a rule's postponement).

24

25   [8] ONRR evaluated the economic impacts of the Repeal using 2015 commodity prices, which were overall somewhat lower than the 2010 values used to calculate the Valuation Rule.  82 Fed. Reg.

26   at 36,943-44 (AR 10191-10192).
     [9] The Repeal appears to contain a typo at 82 Fed. Reg. 36,944 (AR 10192), where ONRR states:

27   "repeal of the rule results in $67.4 million in benefits to industry (with roughly corresponding benefits to the Treasury and States)."  The parenthetical should read: "with roughly corresponding

28   *costs* to the Treasury and States."

16

1    Finally, ONRR failed to examine huge amounts of relevant evidence by declining to review

2  the materials that were considered by the agency during the development of the Valuation Rule.

3  ONRR has attested that the administrative record lodged on April 30, 2018 in this litigation

4  consists of all documents and materials directly or indirectly considered by the agency in

5  developing the Repeal.  ECF No. 38 at 4 ¶ 5.  Among the items *not* considered by the agency

6  prior to finalizing the Repeal were: 1) the 2007 Royal Policy Committee report which identified

7  the need for the Valuation Rule; 2) the Proposed Valuation Rule, which outlined the key purposes

8  of the Rule; and 3) any of the thousands of comments submitted in response to the Proposed

9  Valuation Rule.  By entirely failing to consider the voluminous record that supported

10  development of the Valuation Rule, ONRR blatantly failed to "examine the relevant data" before

11  issuing the Repeal.  *State Farm*, 463 U.S. at 43.

12    Because the Repeal does not address the key reforms implemented by the Valuation Rule,

13  or the reasons for them, ONRR "entirely failed to consider an important aspect of the problem"

14  which Congress mandated it to address, in contravention of the APA.  *Id*.

15  **III.    ONRR FAILED TO PROVIDE A REASONED ANALYSIS OR "GOOD REASONS" FOR
16           THE REPEAL.**

17    ONRR's three proffered justifications for the Repeal failed to provide a reasoned analysis,

18  or even a single "good reason," for repealing the entire Valuation Rule.  *State Farm*, 463 U.S. at

19  42; *Fox*, 556 U.S. at 515.  First, ONRR stated that the Rule contained a number of "defects" that

20  made it challenging or difficult to enforce.  82 Fed. Reg. at 36,935-39 (AR 10183-10187).  At

21  best, these alleged inadequacies provide justification for modifying or clarifying discrete elements

22  of the Valuation Rule which the agency now claims are unclear or overly burdensome—not for

23  repealing the entire Rule.[10]  However, ONRR failed to consider any reasonable alternatives to the

24  wholesale repeal of the Valuation Rule.

25

26  ---
    [10] In *NC Growers*, the court rejected similar rationales put forth by DOL, including that "the
27  Department 'may differ' with the policy positions of the prior Administration," that stakeholders
    "require clear and consistent guidance," and that "the 2008 regulations were a 'complex new
28  regulatory program,' the implementation of which was proving disruptive and confusing to the
    Department and to stakeholders."  *Id*. at 760-61.

17

1   "[A]n agency must examine significant policy alternatives in order to come to 'reasoned'

2   regulatory decisions." *Action for Children's Television v. FCC*, 821 F.2d 741, 748 (D.C. Cir.

3   1987); *see also Pub. Citizen*, 733 F.2d at 103 (agency action was "arbitrary and capricious

4   because the agency failed to pursue available alternatives that might have corrected the

5   deficiencies in the program").  Here, ONRR provided no analysis of alternatives to the Repeal

6   despite the fact that many of the identified issues with the Rule could easily have been remedied

7   through the issuance of guidance documents or simple textual clarifications.  For example, one of

8   the agency's purported bases for the Repeal was an "inadvertent" textual ambiguity as to whether

9   ONRR could issue valuation determinations, but the agency gave no consideration to amending

10  this "oversight."  82 Fed. Reg. at 36,937-38 (AR 10185-10186).  In addition, ONRR did not

11  consider how it might clarify the process for valuing electricity sales or more clearly define "coal

12  cooperative."  *See id.* at 36,936 (AR 10184).  The agency's complete failure to engage in this

13  analysis of alternatives violated the APA.  *See State Farm*, 463 U.S. at 51 (agency violated APA

14  by failing to consider a policy alternative that was consistent with prior agency findings); *Yakima*

15  *Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 746 n.36 (D.C. Cir. 1986) (noting that "[t]he

16  failure of an agency to consider obvious alternatives has led uniformly to reversal" and citing

17  cases); *Pub. Citizen*, 733 F.2d at 103 ("At the very least, [the agency] was required to explain

18  why those alternatives would *not* correct the … problems it had identified.").

19       Nor is the Repeal justified by Executive Order 13,783.  82 Fed. Reg. at 36,934 (AR 10182).

20  This Executive Order directed agencies to revise or rescind regulations which "unnecessarily

21  burden the development of domestic energy resources."  82 Fed. Reg. 16,093 (Mar. 31, 2017).[11]

22  In the Repeal, ONRR "concluded that certain provisions of the 2017 Valuation Rule would

23  unnecessarily burden the development of Federal oil and gas and Federal and Indian coal beyond

24  the degree necessary to protect the public interest or otherwise comply with the law."  *Id.* at

25  36,934 (AR 10182).  To support this contention, however, the agency simply repeated its

26  statement that provisions of the Rule governing electricity sales and coal cooperatives were

27  ───────────────────

[11] Although the Repeal quotes Executive Order 13,783 extensively, *see* 82 Fed. Reg. 36,938 (AR
28  10186), the document was not included in the administrative record.

18

ambiguous or confusing. *Id.* at 36,938-39 (AR 10186-10187).  The agency does not provide any data or analysis to support its claim that these provisions would unduly burden energy production. Further, the agency failed to square this determination with its prior, unchallenged finding that the Rule would save industry millions of dollars in administrative costs. *See* 81 Fed. Reg. at 43,359 (AR 61).  Even the Repeal itself stated that it "will not have a significant economic effect on a substantial number of small entities," 82 Fed. Reg. at 36,952 (AR 10200), and concluded that it is "not a significant energy action under the definition in E.O. 13211," *id.* at 36,953 (AR 10201), meaning that it is not "likely to have a significant adverse effect on the supply, distribution, or use of energy." *See* 66 Fed. Reg. 28,355, 28,356 (May 22, 2001); *see also* 81 Fed. Reg. at 43,368 (AR 70).

Finally, the reconstitution of the Royalty Policy Committee provided no basis for repealing the Valuation Rule.  In the Repeal, ONRR stated that "further internal assessment and analysis combined with consultations facilitated by the RPC's reestablishment will lead to the development and promulgation of a new, revised valuation rule." 82 Fed. Reg. at 36,934 (AR 10182).  However, ONRR failed to acknowledge that one of the initial impetuses for the Valuation Rule was a report from that very committee.  The agency has not explained why it is appropriate to scrap all of the work that came from the RPC's 2007 recommendations and attempt to solve the exact same problems again, starting from square one.  In fact, by referring this matter to the RPC, ONRR has recognized that the issues previously identified by that committee remain unaddressed in the wake of the Repeal. *See id.* at 36,939 (AR 10187) ("The RPC will provide a forum for engaging with the public on many of the same issues we attempted to address in the 2017 Valuation Rule.").  The agency's decision to disregard years of work and start from scratch, without explanation, is an inherently arbitrary action. *See* 5 U.S.C. § 706.

### IV.  ONRR OFFERED AN EXPLANATION THAT RUNS COUNTER TO THE EVIDENCE BEFORE THE AGENCY

"The absence of a reasoned explanation for disregarding previous factual findings violates the APA." *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 969 (9th Cir. 2015). ONRR admitted that its justifications for the Repeal "echoed the concerns voiced by many

19

1   industry representatives in workshops during the public comment period that preceded the 2017

2   Valuation Rule's promulgation." 82 Fed. Reg. at 16,323 (AR 4694).  The record contains not a

3   single report, study, or analysis that contradicts the information that was before the agency when

4   it promulgated the Rule.  Absent "[n]ew facts or evidence coming to light, considerations that [the

5   agency] left out in its previous analysis, or some other concrete basis supported in the record," the

6   Repeal does not satisfy the APA.  *State of California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d

7   1054, 1068 (N.D. Cal. 2018); s*ee also Fox*, 556 U.S. at 515, 537 (Kennedy, J., concurring) ("An

8   agency cannot simply disregard contrary or inconvenient factual determinations that it made in

9   the past, any more than it can ignore inconvenient facts when it writes on a blank slate.").

10      As this district court has noted, "entities which would be subject to the [Valuation] Rule

11   had copious opportunities to raise objections and concerns about implementation during the

12   lengthy notice and comment period." *Becerra*, 276 F. Supp. 3d at 965.  Indeed, many of the

13   reasons to which ONRR pointed to as justification for the Repeal were considered and explicitly

14   rejected by the agency when it promulgated the Valuation Rule.  For example, ONRR claimed

15   that the Rule's provisions governing the value of coal based on electricity sales were

16   "unnecessarily complicated and burdensome to implement or enforce." 82 Fed. Reg. at 36,935

17   (AR 10183).  However, ONRR previously considered comments arguing that "valuing coal using

18   electric sales … ignored and oversimplified the complexities of electric markets and contracts,

19   and was administratively burdensome." *Id*.  ONRR responded to these concerns by explaining

20   that the Valuation Rule permits deduction of "costs associated with converting the coal to

21   electricity to arrive at the value of the coal at the lease." *Id*.  Ultimately, the agency decided to

22   implement the reforms despite these alleged complications. *Id*.

23      Similarly, ONRR claimed that the Repeal was justified by "confusion and uncertainty"

24   surrounding the Rule's default provision, which allowed the Secretary to exercise discretionary

25   authority to determine product value "in specific and limited situations when [ONRR] could not

26   determine whether a lessee had properly paid royalties under the regulations." *Id*. at 36,937 (AR

27   10185).  During the original comment period, some commenters argued that the default provision

28

"lack[ed] specific criteria for determining what is reasonable valuation" and was "burdensome, an overreach of valuation authority, and creat[ed] uncertainty." *Id*. at 43,340 (AR 42). ONRR responded to these comments by noting that "[t]he regulatory changes do not alter the underlying principles of previous regulation," and that the default provision "simply codifies the Secretary's authority to determine the value of production for royalty purposes and specifically enumerates when, where, and how the Secretary will use that discretion." 81 Fed. Reg. at 43,340-41 (AR 42-43).

ONRR also directly responded to comments regarding the requirement that arm's-length contracts be in writing and signed by all parties by noting that the requirement was "a logical evolution from our previous regulations," and that it was necessary to "verify that the lessee's gross proceeds calculations are correct." *Id*. at 43,342 (AR 44) (responding to comments that the "requirement is inconsistent with industry contracting procedures" because "contracts that are not in writing are still enforceable"). Finally, ONRR argued that due to an alleged "oversight in the rule … ONRR arguably had no authority to continue to issue valuation determinations" and that "it was unclear whether the lessee may appeal the determination." 82 Fed. Reg. at 36,937-38 (AR 10185-10186). However, the Valuation Rule explicitly stated that "[i]ndustry may always request a binding determination," 81 Fed. Reg. at 43,343 (AR 45), and outlined when a lessee can and cannot appeal a determination, *id*. at 43,375 (AR 77). *See also* AR 464-67 (explaining when determinations are binding and confirming that determinations may be appealed). ONRR has not explained why these concerns, which it already addressed, now form a basis for it to reverse its position.

"[E]ven when reversing a policy after an election, an agency may not simply discard prior factual findings without a reasoned explanation." *Organized Vill. of Kake*, 795 F.3d at 968. ONRR's contradictory findings, based on an unchanged record, "raise questions as to whether the agency is fulfilling its statutory mandates impartially and competently." *Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1049 (9th Cir. 2010). Because ONRR has failed to provide a "reasoned

21

1  explanation … for disregarding facts and circumstances that underlay or were engendered by the

2  prior policy," it has violated the APA.  *Fox*, 556 U.S. at 516.

3                                             **CONCLUSION**

4      For the reasons given above, the States of California and New Mexico respectfully request

5  that this Court grant their motion for summary judgment, declare that the Repeal is unlawful, and

6  vacate the Repeal.

7

8  Dated:  June 13, 2018                              Respectfully Submitted,

9                                                     XAVIER BECERRA
                                                       Attorney General of California
10                                                    DAVID A. ZONANA

11

12                                                    /s/ Mary S. Tharin
                                                       MARY S. THARIN
13                                                    GEORGE TORGUN

14                                                    *Attorneys for the State of California*

15
                                                       HECTOR BALDERAS
16                                                    Attorney General of New Mexico

17                                                    /s/ Ari Biernoff
                                                       ARI BIERNOFF
18                                                    BILL GRANTHAM (*admitted pro hac vice*)

19                                                    *Attorneys for the State of New Mexico*

20

21

22

23

24

25

26

27

28